**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

DAVID SMITH, *et al.*, individually                                                    PLAINTIFFS
and on behalf of others similarly situated

v.                                          Case No. 4:09CV000679 JLH

FRAC TECH SERVICES, LTD.                                                    DEFENDANT

<u>**OPINION AND ORDER**</u>

The plaintiffs have filed a Motion for Approval of Notice and Consent to Join Collective

Action.  For the following reasons, that motion is granted in part and denied in part.

**I.**

Frac Tech, a Texas limited partnership, is an oil field service company that services oil and

gas wells throughout the United States.  The plaintiffs are twenty current or former employees of

Frac Tech Services, Inc.  Fourteen were employed as Service Supervisors.  Three were employed as

Field Coordinators.  Three were employed as Field Engineers.  All allege that they were routinely

required to work more than 40 hours per week but were not compensated as required by the Fair

Labor Standards Act, 29 U.S.C. §§ 206 and 207.  All allege that Frac Tech engaged in a common

practice, policy, or plan of refusing to compensate all hours worked and refusing to pay overtime.

In addition, individual plaintiffs David Smith and Alan Sheedy allege that Frac Tech engaged in

retaliatory conduct against them, in violation of 29 U.S.C. § 215(a)(3).  Each named plaintiff

purports to bring this action "on behalf of himself and on behalf of all other Frac Tech employees,

whether past, present or future, who are classified as salaried employees but in reality are or will be

non-exempt from the overtime requirements of the Fair Labor Standards Act."

The plaintiffs wish to bring a collective action pursuant to 29 U.S.C. § 216(b), which provides in relevant part:

> An action to recover the liability prescribed . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

District courts have the discretion, in appropriate cases, to implement § 216(b) and issue orders authorizing notice to potential members of the collective action of the opportunity to "opt-in" the action. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 486, 107 L. Ed. 2d 480 (1989). Courts may use one of the two tests set out in *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995). *See Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 944-45 (W.D. Ark. 2003). A majority of district courts in the Eighth Circuit, however, have adopted the two-step process under which a district court conditionally orders the class to proceed as a collective action at the notice stage and permits motions to decertify at the conclusion of discovery. *In re Pilgrim's Pride Fair Labor Standards Act Litigation*, 2008 WL 4877239, at *3 (W.D. Ark. Mar. 13, 2008) (collecting cases); *McQuay v. Am. Int'l Group, Inc.*, 2002 WL 31475212, at *2 (E.D. Ark. Oct. 25, 2002).

At the notice stage, the court determines, based on the pleadings and affidavits, whether notice should be given to potential class members. *Mooney*, 54 F.3d at 1213. The key issue is whether the members of the proposed class are similarly situated. *Freeman*, 256 F. Supp. 2d at 945. If the court allows notification, then a representative class is conditionally certified and notice is sent

to the putative opt-in plaintiffs. *Mooney*, 54 F.3d at 1214.  At the second stage, the court determines whether to decertify the class once discovery is largely complete.  *Id.*

## II.

In support of their motion for a collective action, the plaintiffs have submitted several affidavits from named plaintiffs describing the nature of their job duties.  The affidavits include job descriptions from nine Service Supervisors, one Field engineer, and two Field Coordinators.  The affidavits are similar in large part, except for the description of job duties.

The description of the Service Supervisors' duties is as follows:

5.      My primary duties include rigging up equipment at job sites by unloading hoses, fittings, pipes, valves, etc., from a truck and connecting it to the equipment using a sledge hammer.  Once the equipment is setup [sic] I monitor rates, volumes, and pressures of chemicals and fluids from the control van on the job site and swap out pumps as necessary.  I alternate between monitoring from the control van and walking the field to ensure that the equipment (the pumps, trucks, chemical rigs, etc.) is in proper working order and functioning appropriately.  I am responsible for monitoring safe operations by walking around the job site looking for leaks, spills and other equipment failures.  Once we begin the fracturing process the customers generally demand the process be completed as quickly as possible.  Often times we have to complete several stages of fracturing in one twenty-four hour period.  Once our assignment is completed we rig down the equipment by unhooking hose, fittings, pipes, valves, etc. from the equipment with a sledge hammer, and load it back on the truck.  We gather up our tools and equipment and remove from the location back to the facility or to the next job site.

6.      When not on a job site I ensure that equipment is prepared and ready to go for the next job.  I spend some of my time at the facility assisting maintenance and other departments.

Of the three Field Coordinators, two submitted affidavits.  Paragraph 5 describing the duties of the Field Coordinators is identical to the duties described for Service Supervisors.  However, paragraph 6 for both Field Coordinators is different. Plaintiff Christopher Giles's paragraph 6 reads:

6.      When not on a job site I ensure that the necessary fluid and chemical testing, as well as paperwork, are prepared and ready to go for the next job.

Plaintiff Patrick Barry's paragraph 6 reads:

6.      When not on a job site I ensured that equipment was prepared and ready to go for the next job, often by loading trucks with chemicals and driving them back to the yard.   I spent some of my time at the facility assisting maintenance and other departments.

The job description from the one Field Engineer affidavit differs from both the Field

Coordinators and Service Supervisors:

5.      My primary duties include strapping sand kings once we are on location which involves climbing up and into the sand container box to check the sand levels.  I retain samples of sand from each container and sieve each one to verify the correct mesh was delivered.  I am responsible for verifying how much sand is in the box before, during and after each job.  When I worked at the Parachute, Colorado location, my duties included rigging up equipment at job sites by unloading hose, fittings, pipes, valves, etc. from a truck and connecting it to the equipment using a sledge hammer.  Once the location is rigged up with the proper equipment, I monitor rates, volumes, and pressures of chemicals and fluids from the control van on the job site, and complete paperwork documenting these levels.  I am responsible for giving technical advice during the job. *[Once we begin the fracturing process the customers generally demand the process be completed as quickly as possible.  Often times we have to complete several stages of fracturing in one twenty-four hour period.  Once our assignment is completed we rig down the equipment by unhooking hose, fittings, pipes, valves, etc. from the equipment with a sledge hammer, and load it back on the truck.  We gather up our tools and equipment and remove from the location back to the facility or to the next job site.]*[1]

6.      Before leaving the field, I complete paperwork about any problems that occurred on the assignment we had just finished, and any other necessary paperwork.

7.      When not on a job site I ensure that the necessary fluid and chemical testing, as well as paperwork, are prepared and ready to go for the next job.

---

[1] The italicized portion is identical to the latter half of paragraph 5 for both Service Supervisors and Field Coordinators.

In addition to the differences in job duties, the affidavits differ with respect to employee evaluations and recommendations for promotion.  The affidavits from the Service Supervisors and the one Field Engineer all say that they completed various numbers of employee evaluations but never recommended an employee for promotion.  The two affidavits from Field Coordinators, however, state that they neither prepared any employee evaluations nor recommended promotion.

Each affidavit contends that the respective duties for Services Supervisors, Field Engineers, and Field Coordinators did not include tasks that would qualify them as exempt from the FLSA's overtime pay requirements.  The last paragraph of each affidavit, regardless of job classification, reads:

> I know there are approximately 60 to 70 employees nationwide that perform the same functions I do and work as many hours as well, these [sic] other employees are similarly situated to me.

### III.

Frac Tech objects to the motion for notice and to join as a collective action, arguing that the putative plaintiffs are not similarly situated to the named plaintiffs.  Frac Tech contends that each employee will require an individualized, fact-based analysis to determine whether the employee qualifies under the executive, administrative, or professional exemptions under the FLSA.   Frac Tech frames the issue as whether, based on the affidavits, the named plaintiffs are similarly situated with all other Frac Tech Service Supervisors, Field Engineers, and Field Coordinators.

In their reply brief, the plaintiffs argue that Service Supervisors, Field Coordinators, and Field Engineers are all similarly situated insofar as the duties they performed do not meet the definition of an exempt employee, and they are all affected by Frac Tech's decision to classify them as exempt.  The plaintiffs also argue that Service Supervisors are similarly situated with other

Service Supervisors, whereas Field Engineers and Field Coordinators are similarly situated to each other because they all perform the same basic functions.  Finally, the plaintiffs state that employees within each category are similarly situated insofar as all Service Supervisors perform the same duties, all Field Engineers perform the same duties, and all Field Coordinators perform the same duties, regardless of geographical location.

The plaintiffs' complaint states that the plaintiffs are suing on behalf of all Frac Tech employees, and plaintiffs' arguments show that their motion for a collective action is really seeking certification for collective action as to all salaried Frac Tech employees, regardless of employment category.  For reasons discussed below, the named plaintiffs have failed to meet their lenient burden of showing that they are similarly situated to all other putative opt-in plaintiffs, regardless of employment category.  The plaintiffs have shown, however, that all Service Supervisors are similarly situated.  Thus, the plaintiffs' motion for a collective action is granted in part and denied in part.

At the notice stage, the Court does not make findings on legal issues or focus on whether there has been an actual violation of the law.  *In re Pilgrim's Pride*, 2008 WL 4877239, at *3.  The Court also refrains from making credibility determinations or resolving contradictory evidence.  *Id.* The plaintiff's burden is lenient, not heavy, and may be met by making substantial allegations of class-wide discrimination that are supported by affidavits.  *Freeman*, 256 F. Supp. 2d at 945.  A plaintiff need not show that his position is identical to the putative class members' positions, only that his position is similar to those of the absent class members.  *Id.* (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)).

The "similarly situated" determination requires only a modest factual showing.  *See Perez-Benites v. Candy Brand LLC*, 2008 WL 4809105, at *3 (W.D. Ark. Oct. 31, 2008).  Although not

defined by the FLSA, "similarly situated" typically requires some showing that the plaintiffs and putative members were victims of a common decision, policy, or plan of the employer that affected all class members in a similar fashion. *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, (W.D. Ark. 2007) (citing *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1106-08 (10th Cir. 2001); *Katusch v. Premier Communications*, 504 F. Supp. 2d 685 (W.D. Mo. 2007)). A district court can consider a variety of non-conclusive factors to determine whether employees are similarly situated, including (1) whether the plaintiffs hold the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether the plaintiffs were subjected to the same policies and practices; and (5) the extent to which the acts constituting the alleged violations are similar. *Stone v. First Union Corp.*, 203 F.R.D. 532, 542-43 (S.D. Fla. 2001) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996) and *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208 (11th Cir. 2001)).

Numerous courts have denied certification of a collective action where determining whether putative plaintiffs are similarly situated will depend on a fact-intensive inquiry into the duties performed by each individual employee. Frac Tech relies in part on *Moriskey v. Pub. Serv. Elec. and Gas Co.*, 111 F. Supp. 2d 493 (D. N.J. 2000), in which the district court held that the plaintiffs failed to show that putative class members were similarly situated or that a collective action would be efficient. In that case, however, over 100 potential plaintiffs had already opted in and discovery was already completed at the time of the district court's analysis. Because the case was "clearly beyond the first tier," or notice stage, the district court adopted a stricter standard in ruling on whether the plaintiffs were similarly situated. *Id.* at 497-98. Since the collective action was based on the distinction between exempt and non-exempt employees, rather than based on discrimination, the

focus of the court's analysis was on the nature of the employees' job duties.  Because the plaintiffs failed to show that "the nature of the work performed by other claimants [was] at least similar to [their] own," the court held that the opt-in plaintiffs were not similarly situated.  *Id.* at 498-99.  In this case, little or no discovery has been conducted, so the Court sees no need to adopt the stricter standard used in *Morisky*.  *Id. Moriskey*, 111 F. Supp. 2d at 497-98.

In *Smith v. Tradesmen Int'l, Inc.*, the sole evidence of similarly situated employees was three identical affidavits by employees with different job titles, different job responsibilities, and who worked in different geographical locations.  In that case, the district court denied certification of a collective action because there was an insufficient discovery to make an informed decision on the issue of whether employees were similarly situated.   *Smith v. Tradesmen Int'l, Inc.*, 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003).

In *Holt v. Rite Aid Corp.*, the plaintiffs were store managers or assistant store managers whom the defendant company classified as exempt.  The plaintiffs sought a nationwide or regional collective action certifying as a class all store managers or assistant store managers.  The district court considered the threshold question of whether the mere classification as exempt was sufficient to establish that the putative collective action members were similarly situated.  Although the formal, written job descriptions contained many managerial tasks, the plaintiffs argued that in fact they performed non-managerial duties for a majority of their working hours.  The district court denied certification of a collective action because the nature of the plaintiffs' claim turned on fact-intensive evidence of the individual plaintiffs' day-to-day tasks.  *Holt*, 333 F. Supp. 2d 1265, 1271 (M.D. Ala. 2004).  The district court then considered the degree to which evidence regarding the plaintiffs' job duties could be applied to other employees.  For the same reason—that the court would have to

inquire as to the daily tasks of each putative collective action member to determine whether they are similarly situated—the district court ruled against certification of a collective action. *Id.* at 1274-75.

In *Mike v. Safeco Ins. Co. of America*, the plaintiff was a field claims representative who claimed that the majority of his day-to-day tasks were non-administrative. He sought to proceed on behalf of all current and former employees of the company whose primary duties were to appraise damaged automobiles, and who held one of three possible titles for a field claims representative. The district court chose not to certify a collective action because it would have to conduct an individual inquiry as to whether each proposed plaintiff's job responsibilities were similar to Mike's. *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220-21 (D. Conn. 2003) ("The merits of Mike's claim will turn upon evidence relating to Mike's day-to-day tasks, and not upon any Safeco company policy or decision."); *see also Reich v. Homier Distributing Co., Inc.*, 362 F. Supp. 2d 1009, 1013-14 (N.D. Ind. 2005) ("Many other courts, both in this circuit and others, have declined to find potential class members similarly situated where liability depended on an individual determination of each employee's duties."); *Sheffield v. Orius Corp.*, 211 F.R.D. 411, (D. Or. 2002) (where plaintiffs held several different job titles and worked in different geographic locations, "the allegations contained in the affidavits submitted to the court suggest that each claim would require extensive consideration of the individualized issues of liability and damages"). *But see Moss v. Crawford & Co.*, 201 F.R.D. 398, 410-11 (W.D. Pa. 2000) (although opt-in plaintiffs worked in various positions, the district court was able to ascertain from the evidence and specific nature of work performed that the duties of one opt-in plaintiff could not substantially differ from the duties of another working in the same position).

The plaintiffs cite the Court to several cases in the Eastern District of Arkansas in which conditional certification was granted.  In *Musticchi v. City of Little Rock*, 4:08CV00419 SWW (E.D. Ark. Feb. 2, 2009), a collective action was approved for a police officer seeking to represent all other Little Rock police officers required to don and doff certain uniform items.  That case is inapposite, insofar as it involved claims for donning and doffing, rather than for unpaid overtime.

In *Almeda v. Crittenden County, Ark.*, 3:05CV00024 JLH (E.D. Ark. Nov. 4, 2005), this Court approved a collective action for 65 employees or former employees of the Sheriff's Department of Crittenden County seeking to represent all current or former employees of the department.  They alleged that the department required them to work more than 40 hours per week without overtime pay.  In that case, however, the "similarly situated" analysis did not turn on whether the plaintiffs all performed the same or similar job duties—no dispute over job duties existed.  Rather, the disputed issue was whether the plaintiffs were similarly situated based on their claim that they worked more than 40 hours per week, where employees' work schedules differed depending on their position and location.

Finally, in *McQuay v. American Int'l Group, Inc.*, 2002 WL 31475212, at *2-3 (E.D. Ark. Oct. 25, 2002), the plaintiffs sought to have certified as a collective action a class of employees to include all claims adjusters, regardless of the kind of claims they worked on.  In that case, the court considered the plaintiffs' affidavits, job descriptions, and supporting deposition testimony.  The court limited the collective action to claims adjusters for workers compensation who worked in Arkansas and Oklahoma, finding that claims adjusters who worked in other areas (such as property and casualty claims, complex claims, and construction claims) did not perform job duties that were similar to the claims adjusters for workers compensation.

10

The plaintiffs have submitted affidavits from nine Service Supervisors, two Field Coordinators, and one Field Engineer. The job duties described in those affidavits differ for each employment category. The very essence of the plaintiffs' FLSA claim against Frac Tech hinges on the nature of the duties performed. The duties performed by the different employment categories will have to be analyzed to determine whether those particular duties make that particular category exempt under the FLSA, making this case similar to *Smith v. Tradesmen Int'l, Inc.*, *Holt v. Rite Aid Corp.*, and *Mike v. Safeco Ins. Co. of America*, discussed above. According to the affidavits, the duties for Service Supervisors, Field Engineers, and Field Coordinators differ. Therefore, those three employment categories cannot be similarly situated for purposes of determining whether their respective duties give them exempt status. As in *McQuay*, a collective action certifying into the same class all salaried Frac Tech employees regardless of job duties or position title would be inappropriate at this stage.

Furthermore, the plaintiffs' motion for a collective action does not take into account the additional plaintiffs named in their recently filed third amended complaint. The plaintiffs filed their motion for approval of a collective action on October 13, 2009, after having filed a second amended complaint. Since then, the plaintiffs have filed a third amended complaint, in which they make the same claims but add seven additional plaintiffs. Of those seven, five are former Service Supervisors. One new plaintiff, Gregory Shaw, is listed only as a "salaried employee, but in reality non-exempt from the overtime requirements of [FLSA]," without stating his position or employment category. Another new plaintiff, Richard Pearson, is listed as a "salaried facility manager," an employment category not previously mentioned by the plaintiffs. Like the plaintiffs in the second amended complaint, the additional plaintiffs are filing the complaint "on behalf of himself and on behalf of

all other Frac Tech employees, whether past, present or future, who are classified as salaried employees but in reality are or will be non-exempt from the overtime requirements of the [FLSA]." The third amended complaint lists one plaintiff in a previously undiscussed employment category—facility manager—and another in no category at all. Because the plaintiffs' FLSA claim against Frac Tech depends on an analysis of employees' job duties, it is impossible at this early stage for the Court to conclude that all past, present, or future salaried employees of Frac Tech are similarly situated to all the named plaintiffs, regardless of employment category, where the group of named plaintiffs keeps expanding to include new position titles or no position title at all.

Under the "fairly lenient" standard of the notice stage, the named plaintiffs who are Service Supervisors have shown that they are similarly situated to other putative Service Supervisor plaintiffs. *See In re Pilgrim's Pride*, 2008 WL 4877239, at *4. The plaintiffs have submitted nine affidavits from various Service Supervisors residing in different geographic locations, and a majority of the named plaintiffs are Service Supervisors. Their affidavits are identical regarding the duties performed. It may be that some Service Supervisors have slightly different responsibilities than others, but class members' duties must only be similar, not identical. *Resendiz-Ramirez*, 515 F. Supp. 2d at 941; *Spoerle v. Kraft Foods Global, Inc.*, 253 F.R.D. 434, 439-40 (W.D. Wis. 2008) ("If simply identifying difference between the parties were enough to defeat a motion for class certification, it would be impossible for any lawsuit to proceed as a class."). The Service Supervisors have also alleged that they are victims of a single decision, policy, or plan—namely, categorizing all Service Supervisors as exempt from FLSA overtime pay requirements. As in *McQuay*, where the district court limited the plaintiffs' collective action to include only workers compensation claims adjusters, here the Court chooses to limit the collective action only to Service

Supervisors.  The plaintiffs have met their burden of showing that Service Supervisors are similarly situated for purposes of giving notice of a collective action involving Service Supervisors.  If at a later stage the Court finds that a collective action with the Service Supervisors is unmanageable or inappropriate, the Court has the discretion to decertify the class altogether.  *See In re Pilgrim's Pride*, 2008 WL 4877239, at *4.

The plaintiffs, however, have not made a sufficient showing that the Field Engineers and Field Coordinators perform similar respective duties so that the Court can certify this case as a collective action as to them.  The plaintiffs have submitted affidavits from only two Field Coordinators and one Field Engineer.  The affidavits from two Field Coordinators are not sufficient to show that all other Field Coordinators in all other geographic locations performed similar duties.  The affidavit from one Field Engineer is also insufficient to satisfy the plaintiffs' burden of showing that all other Field Engineers are similarly situated.

## IV.

Having determined that a collective action is proper as to the Service Supervisors, the Court now addresses the substance of the plaintiffs' proposed notice to the Service Supervisors.  As the plaintiffs point out, their proposed notice is identical in substance to a notice that this Court approved in *Almeda v. Crittenden County*.  The Court has reviewed both the plaintiffs' proposed notice and the edited version submitted by the defendants.  The Court agrees that the plaintiffs' proposed notice is modeled on the Court's approved notice in *Almeda*.  The Court finds that the plaintiffs' proposed notice is neutral in tone and is approved, with the following changes.  The addressee listed after "TO:" should read: "Present and former Frac Tech Services, Ltd., Service Supervisors."  Under "(3) Composition of the Class," the second sentence should read: "Specifically, the Plaintiffs seek to sue

on behalf of any and all current or former employees of Frac Tech Services, Ltd., who worked as Service Supervisors from October 2, 2006, to the present or to the date of their termination."

## CONCLUSION

For the foregoing reasons, the Court approves notice and certification of a collective action including Frac Tech Service Supervisors, but not including other employment categories or positions.  The plaintiffs' motion is GRANTED IN PART and DENIED IN PART (Docket #37).

IT IS SO ORDERED this 24th day of November, 2009.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE